UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

LUIS V. GUZMAN,

Defendant.

---

19 Cr. 24 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Defendant Luis V. Guzman, who is currently incarcerated at the Giles W. Dalby Correctional Institution in Post, Texas, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), citing the ongoing COVID-19 pandemic, his pre-existing medical conditions, and the conditions of his confinement. Separately, Mr. Guzman has moved for additional credit against his sentence for serving time in lockdown status because of the COVID-19 pandemic.[1] The Government opposes both motions. As set forth in the remainder of this Order, the Court denies both of Mr. Guzman's motions.

---

[1] Though Mr. Guzman moved in a separate motion for "hardship credit" (Dkt. #37), which he defines as credit in the amount of two days of imprisonment for each day served, the Court believes that the only legal basis for it to award such credit would be if the Court were to determine that the conditions of Mr. Guzman's confinement, considered on their own or in connection with his compassionate release arguments, amounted to "extraordinary and compelling reasons" warranting a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Accordingly, the Court has considered the two motions in tandem. *See generally United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."); *see also id.* ("[C]ompassionate release is a misnomer. [The First Step Act] in fact speaks of sentence reduction. A district court could, for instance, reduce but not eliminate a defendant's prison sentence.").

In its opposition, the Government notes that some courts have considered such applications under the rubric of 28 U.S.C. § 2241, which would implicate exhaustion requirements and which would have to be brought in the district of confinement. (*See* Dkt. #39 at 10 (collecting cases)). Given that Mr. Guzman has failed to demonstrate

## BACKGROUND

On April 27, 2018, Mr. Guzman was charged in a sealed complaint with conspiring to distribute heroin, in violation of 21 U.S.C. § 846. (Dkt. #1). Mr. Guzman was arrested five days later, on May 2, 2018, and presented in the United States District Court for the Western District of New York, before appearing in this Court on May 16, 2018. (Dkt. #3, 5). Ultimately, Mr. Guzman consented to the filing of an information, and then a superseding information, charging him with narcotics conspiracy. (Dkt. #15, 20).

On April 24, 2019, Mr. Guzman pleaded guilty to conspiracy to distribute and possess with the intent to distribute one kilogram and more of heroin, 400 grams and more of fentanyl, and five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (Dkt. #23 (plea transcript)). The offense conduct to which Mr. Guzman pleaded guilty included a planned transaction of 20 kilograms of heroin, and the warehousing of multiple kilograms of narcotics in the bedroom of a co-conspirator. (Final Presentence Investigation Report ("PSR") ¶¶ 8-10, 12). Mr. Guzman's guilty plea was entered pursuant to a written plea agreement with the Government in which the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 87 to 108 months' imprisonment. (*Id.* at ¶ 4).

---

that he has exhausted his remedies, and given his inability to bring such a petition in this Court, the Court does not consider his application under Section 2241.

Sentencing in the matter took place on July 30, 2019. (Dkt. #34 (sentencing transcript ("Sent. Tr.")); *see also* Dkt. #33 (judgment)). At sentencing, the defense sought a non-Guidelines sentence of 60 months' imprisonment, while the Government sought a sentence within the applicable Guidelines range. (Dkt. #30 (defense sentencing submission), 32 (Government sentencing submission)). During the sentencing proceeding, the Court discussed with the parties certain aspects of Mr. Guzman's conduct, including his participation in a plot to bribe military officials in the Dominican Republic and his flight to Canada after his co-conspirator's arrest. (*See, e.g.*, Sent. Tr. 8-11, 15-16).

Ultimately, the Court imposed a sentence of 65 months' imprisonment, reasoning in part as follows:

> As you can tell by my questioning, what I've tried to do is two things: I've tried to consider the facts of this case and what makes Mr. Guzman special, which includes the love of his family and the support that they've given; the fact that he has no significant prior criminal history and no prior convictions; and that he has a history of legitimate employment with some of the more aggravating factors of this case which include the quantity of drugs; the discussion of bribes; the managerial role, using the term very loosely with respect to Mr. Garcia Feliz; the length of time of the conspiracy; and the arguable flight upon learning of law enforcement's interest in him
>
> \*\*\*
>
> I'm going to impose a term of 65 months of imprisonment which is understandably more than what Mr. Sosinsky was suggesting but less than I could have.
>
> The 65 months reflect all of the aggravating factors that I've mentioned but also the fact that he has the support

3

> of his family and that it would appear that immediately upon the completion of his sentence or very shortly thereafter, he is going to be deported.

(Sent. Tr. 31-32).

Mr. Guzman filed a *pro se* motion for compassionate release on August 13, 2021 (Dkt. #36), and a motion for additional credit for the time he had served during the COVID-19 pandemic on August 25, 2021 (Dkt. #37). The Government opposed Mr. Guzman's motions by brief dated January 10, 2022. (Dkt. #39).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary

4

order).  "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has very recently summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and

5

> characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, ___, 2021 WL 6058144, at *2 (2d Cir. Dec. 22, 2021); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what qualifies as "extraordinary and compelling reasons").

## DISCUSSION

The parties are in agreement that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) has been satisfied. (*Compare* Dkt. #36 at Ex. A (denial notice), *with* Dkt. #39 at 4). The Court thus proceeds to consider whether Mr. Guzman has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has not.

As noted, Mr. Guzman argues that the conditions of his incarceration at Dalby CI place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the congregate setting, his existing medical conditions, and the inability of prison staff to handle an outbreak of the virus. Courts in this District have granted, and denied, compassionate

6

release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons. *See, e.g., United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Bush*, No. 17 Cr. 611-4 (AT), 2021 WL 3097417, at *2 (S.D.N.Y. July 21, 2021) ("Courts have granted modified sentences in light of COVID-19 for inmates with illnesses or injuries that make them particularly vulnerable to COVID-19. By contrast, in cases where an inmate does not suffer such illnesses or injuries, courts in this district have denied requests for compassionate release." (internal citations omitted)).

Recognizing the expansive discretion identified by the Second Circuit in *Brooker*, this Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant. In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the

proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Guzman has not demonstrated the existence of extraordinary and compelling circumstances in his case. Mr. Guzman is 51 years old, which places him at a slightly elevated risk of contracting or dying from COVID-19. *See* COVID-19 Weekly Cases and Deaths per 100,000 Population by Age, Race/Ethnicity, and Sex, CENTERS FOR DISEASE CONTROL AND PREVENTION ("CDC"), https://covid.cdc.gov/covid-data-tracker/#demographicsovertime (accessed Jan. 13, 2022). Mr. Guzman adds, however, that he has various comorbidities that exacerbate his risk, including sleep apnea and high cholesterol, and his medical records disclose the additional conditions of prediabetes and glaucoma. (Dkt. #36 at 7 & Ex. B; Dkt. #39 at 3).

The CDC has periodically revised its analysis of comorbidities over the course of the COVID-19 pandemic, now focusing on conditions that place individuals at a higher risk of "get[ting] severely ill from COVID-19." *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed Jan. 13, 2022). None of Mr. Guzman's medical issues is listed among these conditions.

The Court has reviewed with care Mr. Guzman's BOP medical records, which make clear that Mr. Guzman has worked successfully with BOP medical professionals at Dalby CI to address his health issues. There is nothing to suggest that Mr. Guzman has been unable to care for himself or has been neglected by BOP medical personnel. Instead, Mr. Guzman appears to have received appropriate medical care while incarcerated. *See, e.g., Brady*, 2020 WL 2512100, at *3-4 (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable and managed in BOP facility); *see also United States* v. *Brown*, No. 18 Cr. 339 (PAC), 2021 WL 5233506, at *1 (S.D.N.Y. Nov. 10, 2021) (noting that "credible medical sources" have identified sleep apnea as a risk factor for COVID-19, but denying compassionate release request that cited sleep apnea and other medical conditions).

The Court also observes that Mr. Guzman has received the COVID-19 vaccine, including a booster shot in December 2021. His vaccinated status mitigates, though it does not reduce entirely, his risk of contracting the COVID-19 virus and having serious medical conditions, and it further counsels against a finding of "extraordinary and compelling reasons." *See United States* v. *Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) ("While the intersection of the COVID-19 pandemic and underlying health conditions can serve as an extraordinary and compelling circumstance justifying compassionate release, Bailey is fully vaccinated against COVID-19 and his medical records indicate that his chronic health conditions are well-

9

controlled. Bailey's risk of continued incarceration given the COVID-19 pandemic does not qualify as an extraordinary and compelling circumstance.").

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities during the pandemic. *See, e.g.*, *United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093 (S.D.N.Y. Sept. 1, 2020). To that end, this Court has repeatedly reviewed the BOP's COVID-19 Plan, *see* https://www.bop.gov/coronavirus/ (last accessed Jan. 13, 2022), as well as the BOP's listing of confirmed cases among inmates and staff at each facility. As of the date of this Order, the BOP has identified five current cases of COVID-19 among inmates at the Dalby CI. On balance, this Court concludes that the danger that Mr. Guzman faces from infection with COVID-19, even accounting for his proffered medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate release. *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Guzman's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). Mr. Guzman engaged in substantial narcotics trafficking over an extended period of time. He plotted to bribe foreign military officials, and he fled to Canada when his co-conspirator was arrested. The Court varied downwardly substantially at the time of Mr. Guzman's sentencing, and it concludes now that the additional information presented by Mr. Guzman — including information regarding the conditions of his confinement when Dalby CI has been placed in lockdown status — does not warrant a further reduction in sentence. Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Guzman's application based on its consideration of the Section 3553(a) factors.[2]

---

[2] To the extent that he has not otherwise done so, Mr. Guzman can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. *See also Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency*, 45 Op. O.L.C. ___ (Dec. 21, 2021) (slip op.); *Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency*, 45 Op. O.L.C. ___ (Dec. 21, 2021) (slip op.). The decision to grant any such relief is reserved to the discretion of the BOP.

11

## CONCLUSION

For the foregoing reasons, Defendant Luiz V. Guzman's motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and for additional hardship credit are DENIED.  The Clerk of Court is directed to terminate the motions at docket entries 36 and 37.

The Court also directs the Clerk of Court to mail a copy of this Order to Mr. Guzman at the following address: Luis V. Guzman, Reg. No. 28063-055, Giles W. Dalby Correctional Institution, 805 North Avenue F, Post, TX 79356.

SO ORDERED.

Dated:  January 13, 2022
        New York, New York

*Katherine Polk Failla*

KATHERINE POLK FAILLA
United States District Judge